[Cite as *In re W.P.*, 2025-Ohio-162.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| IN THE MATTER OF: | : | JUDGES: |
| | : | Hon. Craig R. Baldwin, P.J. |
| W.P. | : | Hon. William B. Hoffman, J. |
| B.P. | : | Hon. Andrew J. King, J. |
| D.P. | : | |
| Z.P. | : | |
| | : | Case Nos. 2024 CA 00139 |
| | : | 2024 CA 00140 |
| | : | 2024 CA 00141 |
| | : | 2024 CA 00142 |
| | : | |
| | : | O P I N I O N |

CHARACTER OF PROCEEDING:      Appeals from the Court of Common Pleas, Family Court Division, Case Nos. 2023JCV00699, 2023JCV00700, 2023JCV00701, and 2023JCV00702

JUDGMENT:      Affirmed

DATE OF JUDGMENT:      January 21, 2025

APPEARANCES:

For Appellant Mother

KATHALEEN O'BRIEN
116 Cleveland Avenue SW, Suite 303
Canton, OH 44702

CASA/Guardian ad Litem

MELISSA BROWN
110 Central Plaza South
Canton, OH 44702

For Appellee Agency

BRANDON J. WALTENBAUGH
402 2nd Street SE
Canton, OH 44702

*King, J.*

{¶ 1}   Appellant mother, C.F., appeals the July 31, 2024 judgment entries of the Court of Common Pleas of Stark County, Ohio, Family Court Division, terminating her parental rights and granting permanent custody of her four children to appellee agency, Stark County Department of Job and Family Services ("SCDJFS").  We affirm the trial court.[1]

## FACTS AND PROCEDURAL HISTORY

{¶ 2}   On June 23, 2023, SCDJFS filed complaints alleging four children, W.P. born November 2016, B.P. born April 2018, D.P. born October 2019, and Z.P. born January 2023, to be dependent and/or neglected.  Mother of the children is appellant herein; father is Z.P.  A shelter care hearing was held on June 26, 2023.  After probable cause was found, the children were placed in the temporary custody of SCDJFS.

{¶ 3}   An adjudicatory hearing was held on July 19, 2023; the parents requested evidence so the matter was continued to September 5, 2023.  A hearing was held on that date and neither parent appeared.  By decisions filed same date, the trial court found the children to be dependent and continued the children's temporary custody with SCDJFS. The trial court approved and adopted the case plans.

{¶ 4}   Dispositional review hearings were held on December 21, 2023, and May 21, 2024; status quo was ordered each time.

{¶ 5}   On May 21, 2024, SCDJFS filed motions for permanent custody of the children.  A hearing before the trial court was held on July 30, 2024.  By judgment entries filed July 31, 2024, the trial court terminated all parental rights and granted permanent

---

[1]This review pertains to mother only and does not apply to father.

custody of the children to SCDJFS. Findings of fact and conclusions of law were filed contemporaneously with the judgment entries.

{¶ 6}   Mother filed appeals and assigned the following errors in each case:

I

{¶ 7}   "THE TRIAL COURT ERRED IN GRANTING PERMANENT CUSTODY TO THE STARK COUNTY DEPARTMENT OF JOB AND FAMILY SERVICES (SCDJFS) AS SCDJFS FAILED TO SHOW BY CLEAR AND CONVINCING EVIDENCE THAT GROUNDS EXISTED FOR PERMANENT CUSTODY AND SUCH DECISION WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."

II

{¶ 8}   "THE TRIAL COURT ERRED IN GRANTING PERMANENT CUSTODY TO STARK COUNTY DEPARTMENT OF JOB AND FAMILY SERVICES (SCDJFS) AS SCDJFS FAILED TO SHOW BY CLEAR AND CONVINCING EVIDENCE THAT IT IS IN THE BEST INTEREST OF THE MINOR CHILDREN TO GRANT PERMANENT CUSTODY AND SUCH DECISION WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."

I, II

{¶ 9}   In her first and second assignments of error, mother claims the trial court erred in granting permanent custody of the children to SCDJFS, arguing the trial court's findings that grounds existed for permanent custody and permanent custody was in the best interests of the children were not supported by clear and convincing evidence and were against the manifest weight of the evidence. We disagree with both assignments of error.

{¶ 10} On review for manifest weight, the standard in a civil case is identical to the standard in a criminal case: a reviewing court is to examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine "whether in resolving conflicts in the evidence, the jury [or finder of fact] clearly lost its way and created such a manifest miscarriage of justice that the conviction [decision] must be reversed and a new trial ordered." *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist. 1983). In *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997), quoting Black's Law Dictionary (6th Ed. 1990), the Supreme Court of Ohio explained the following:

> Weight of the evidence concerns "the inclination of the *greater amount of credible evidence*, offered in a trial, to support one side of the issue rather than the other. It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the *greater amount of credible evidence* sustains the issue which is to be established before them. Weight is not a question of mathematics, but depends on its *effect in inducing belief*." (Emphasis in original.)

{¶ 11} In weighing the evidence, we are always mindful of the presumption in favor of the trial court's factual findings. *Eastley v. Volkman*, 2012-Ohio-2179.

{¶ 12} R.C. 2151.414(B)(1) states permanent custody may be granted if the trial court determines, by clear and convincing evidence, that it is in the best interest of the child and:

(a) The child is not abandoned or orphaned . . . and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents.

(b) The child is abandoned.

(c) The child is orphaned, and there are no relatives of the child who are able to take permanent custody.

(d) The child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period . . . .

(e) The child or another child in the custody of the parent or parents from whose custody the child has been removed has been adjudicated an abused, neglected, or dependent child on three separate occasions by any court in this state or another state.

{¶ 13} Clear and convincing evidence is that evidence "which will provide in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." *Cross v. Ledford,* 161 Ohio St. 469 (1954), paragraph three of the syllabus. *See In re Adoption of Holcomb,* 18 Ohio St.3d 361 (1985). "Where the degree of proof required to sustain an issue must be clear and convincing, a reviewing court will examine the record to determine whether the trier of facts had sufficient evidence before it to satisfy the requisite degree of proof." *Cross* at 477.

{¶ 14} A child "shall be presumed abandoned when the parents of the child have failed to visit or maintain contact with the child for more than ninety days, regardless of whether the parents resume contact with the child after that period of ninety days." R.C. 2151.011(C).

{¶ 15} R.C. 2151.414(E) sets out the factors relevant to determining whether a child cannot be placed with either parent within a reasonable period of time or should not be placed with either parent. Said section states in pertinent part the following:

(E) In determining at a hearing held pursuant to division (A) of this section or for the purposes of division (A)(4) of section 2151.353 of the Revised Code whether a child cannot be placed with either parent within a reasonable period of time or should not be placed with the parents, the court shall consider all relevant evidence. If the court determines, by clear and convincing evidence, at a hearing held pursuant to division (A) of this section or for the purposes of division (A)(4) of section 2151.353 of the Revised Code that one or more of the following exist as to each of the child's parents, the court shall enter a finding that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent:

(1) Following the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously

and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home.  In determining whether the parents have substantially remedied those conditions, the court shall consider parental utilization of medical, psychiatric, psychological, and other social and rehabilitative services and material resources that were made available to the parents for the purpose of changing parental conduct to allow them to resume and maintain parental duties.

(4) The parent has demonstrated a lack of commitment toward the child by failing to regularly support, visit, or communicate with the child when able to do so, or by other actions showing an unwillingness to provide an adequate permanent home for the child;

(6) The parent has been convicted of or pleaded guilty to an offense under division (A) or (C) of section 2919.22 . . . and the child or a sibling of the child was a victim of the offense . . . .

(10) The parent has abandoned the child.

(16) Any other factor the court considers relevant.

{¶ 16} R.C. 2151.414(D)(1) sets forth the factors a trial court shall consider in determining the best interest of a child:

(D)(1) In determining the best interest of a child at a hearing held pursuant to division (A) of this section or for the purposes of division (A)(4) or (5) of section 2151.353 or division (C) of section 2151.415 of the Revised

Code, the court shall consider all relevant factors, including, but not limited to, the following:

(a) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;

(b) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;

(c) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period . . . ;

(d) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;

(e) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child.

{¶ 17} During the hearing, the trial court heard from the ongoing family caseworker. The agency had repeated involvement with the family since January of 2023 after Z.P. was born and tested positive for THC. T. at 7-8; June 23, 2023 Complaint. In March 2023, it was reported the other three children were not receiving medical treatment and the baby was not growing. *Id.* In June 2023, mother was arrested for child endangering

in violation of R.C. 2919.22(A) regarding W.P.  *Id.*  She had left the six-year old child home alone.  Also, in June 2023, mother left the children with a grandparent and B.P., age 4, was found outside alone.  *Id.*  Mother's housing was "deplorable."  *Id.*

{¶ 18} Under the case plan, mother was to receive a drug and alcohol assessment through CommQuest and follow any recommendations, obtain a parenting evaluation from Summit Psychological and follow any recommendations, submit to drug screening, and secure appropriate housing and employment.  T. at 9.  Mother failed to complete the parenting evaluation and the drug/alcohol assessment and completed only one drug screening test.  T. at 9-10, 26.  Communication with mother was very sporadic.  T. at 10.  She visited the children four times out of thirteen visitations since July 2023.  T. at 15.  Mother's last visit was in January 2024; the children have not been visited by either parent in a period exceeding ninety days.  *Id.*  The visits mother did have were chaotic.  T. at 16.  Mother does not have stable housing; she was currently housed in a residential treatment center.  T. at 10-11.  She was in the treatment center in lieu of incarceration after pleading guilty in a Portage County case in October 2023 to one count of aggravated possession of drugs (Fentanyl) and attempted tampering with evidence.  T. at 10-11.  On September 27, 2023, mother was found guilty of the child endangering charge.  T. at 8; SCJFS's Exhibit 1.

{¶ 19} The guardian ad litem filed a report recommending permanent custody to SCDJFS.  Guardian ad Litem Report filed July 17, 2024.

{¶ 20} In its July 31, 2024 judgment entries, the trial court found the caseworker's testimony to be credible, and determined the parents have "failed continuously and

repeatedly to substantially remedy the conditions" that caused the children to be removed and have abandoned the children.

{¶ 21} Mother argues she "substantially complied with what was asked of her and if time was granted she would be able to successfully complete within the six month extension." Appellant's Brief at 5. The record demonstrates mother barely complied with the case plan; certainly not "substantially." The caseworker testified an extension of temporary custody would not give the parents enough time to prove sobriety, obtain housing, and locate employment, and an extension would be harmful to the children and not in their best interests. T. at 20, 41-42. Mother would not be released from the residential treatment center for another three to five months (October to December 2024) and would then step down into another program. T. at 12. She was unable to attend the permanent custody hearing in person because she lost her transportation privileges due to an incident at the residential treatment center; she attended via ZOOM and was represented by counsel. T. at 3, 11. Mother did not testify.

{¶ 22} We find the record contains clear and convincing evidence of grounds to support the granting of permanent custody of the children to SCDJFS, to wit: conviction for child endangering and abandonment. R.C. 2151.414(E)(6) and 2151.414(B)(1)(b).

{¶ 23} As for best interests, the four children are placed in three foster homes. T. at 34-35. W.P. and B.P. are placed in two separate, but related, foster homes on the same street; they see each other daily and go to the same school. T. at 35. D.P. and Z.P. are placed together in another foster home. T. at 36. The children are bonded with their respective foster families and are having their needs met. *Id.* The foster families are interested in adopting the children. T. at 37. There are no known available relatives

for kinship placement.  T. at 38-39.  The caseworker opined the children would benefit from adoption because they needed permanency and stability.  T. at 40-41.  She testified the benefit of permanency would outweigh any damage caused by severing the parental bonds.  T. at 41.  The caseworker, as did the guardian ad litem, stated permanent custody was in the children's best interests.  T. at 41, 47.

{¶ 24}  Based upon the testimony presented, we find clear and convincing evidence to support the trial court's decisions.  We do not find the trial court lost its way in making the decisions to terminate mother's parental rights and grant permanent custody of the children to SCDJFS; we do not find any manifest miscarriage of justice.

{¶ 25}  Assignments of Error I and II are denied.

{¶ 26}  The judgments of the Court of Common Pleas of Stark County, Ohio, Family Court Division, are hereby affirmed.

By King, J.

Baldwin, P.J. and

Hoffman, J. concur.